# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| JOHN C. CHEEKS, |
|      Plaintiff, |
|      v. |
| FORT MYER CONSTRUCTION COMPANY, *et al.*, |
|      Defendants. |

Civil Action No. 09-2163 (CKK)

## MEMORANDUM OPINION
(June 25, 2010)

Plaintiff John C. Cheeks ("Cheeks") filed this action *pro se* seeking relief for injuries allegedly suffered from a bid-rigging conspiracy in which his company, Cheeks of North America, Inc. ("CNA"), lost construction contracts to competitors who conspired against him in the bidding process. Named as defendants in this action are four of those competitors (Fort Myer Construction Corporation, Anchor Construction Corporation, Civil Construction, LLC, and Capitol Paving of D.C., Inc.); their officers (Francisco R. Neto, Jose Rodriguez, Lewis Shrensky, Cristina Gregoria); their guarantor and its officer (Western Surety Company and Paul T. Bruflat); the District of Columbia Water and Sewer Authority's Procurement Department, Board of Directors, and Retail Services Committee and various individuals associated therewith (Avis Russell, Jerry Johnson, Guss Bass, John Christodoulakis, Carlo Enciso, William M. Walker, Neil Albert, Daniel M. Tangherlini, F. Alexis H. Roberson, Alan J. Roth, Keith M. Stone, David J. Bardin, Brenda Richardson, Joseph Cotruvo, and Howard Gibbs); the D.C. Department of Transportation's Office of Contracting and Procurement and its officers (David P. Gragan, Jerry

M. Carter, Gabe Klein); the D.C. Department of Transportation's Infrastructure Project Management Administration and its program manager (Said Cherifi); the D.C. Department of Public Works's Office of Contracting and Procurement and its contracting officers (Tara Sigimoni and James Roberts); the D.C. Council Committee on Public Works and Transportation and its members and staff (Jim Graham, Kwame R. Brown, Muriel Bowse, Phil Mendelson, Tommy Wells, Steven Hernandez, Jonathan Kass, and John DeTaeye); the Executive Office of the Mayor of D.C.; and D.C. Mayor Adrian M. Fenty.

All but one of the defendants has entered an appearance in this matter, and one of the defendants (Fort Myer Construction Corporation) is in default. Presently pending before the Court are a series of dispositive and nondispositive motions, including motions to quash service of process and motions to dismiss the Complaint. As explained below, the Court finds that the claims asserted in Counts One through Seventeen of the Complaint are based on injuries to CNA and that Cheeks lacks standing to assert those claims on his own. Because the lack of standing deprives the Court of subject matter jurisdiction, the Court must dismiss Counts One through Seventeen of the Complaint against all defendants. The Court also finds that the remaining claims asserted in the Complaint for alleged constitutional deprivations fail to state a claim upon which relief can be granted. Although some defendants did not move to dismiss these remaining claims, the Court finds that the allegations in the Complaint clearly fail to state a claim and may be dismissed against the other defendants *sua sponte*. Therefore, the Court shall set aside the default against Fort Myer Construction Company and dismiss the Complaint in its entirety.

# I. BACKGROUND

*A.      Facts Alleged in the Complaint*

Plaintiff John C. Cheeks is Chief Executive Officer of Cheeks of North America, Inc. ("CNA").  Compl. ¶ 38.  Cheeks is one of the founders and the owner of CNA, and he is engaged primarily in industrial services, infrastructure improvements, professional consulting of alternative fuels and energy systems, and strategic business development.  *Id.* ¶ 4.  Cheeks also serves as CNA's Senior Project Estimator and has the responsibility for assembling cost estimates for competitive project bids submitted by CNA.  *See id.* ¶¶ 43-45.  During 2008 and 2009, Cheeks participated in five solicitations for bids issued by contracting agencies: three issued by the District of Columbia Water and Sewer Authority ("WASA"), one issued by the District of Columbia Department of Transportation ("DDOT"), and one issued by the District of Columbia Department of Public Works ("DPW").  *Id.* ¶¶ 39-42.

### 1.      WASA IFB No. 080020

On August 20, 2008, Cheeks submitted a bid for CNA in response to WASA's Invitation for Bid ("IFB") No. 080020, entitled "Replacement of Small Diameter Priority Water Mains for 2008 Construction."  *See* Compl. ¶ 48 & Ex. D.7.1 (Bid Submission Form).  Cheeks proposed that CNA would furnish all plant, labor, materials, and equipment to perform the work set forth in the IFB for $11,154,500, and he submitted a bid bond in the amount of $557,725 via company checks.  *See id.* ¶ 48 & Exs. D.7.2 (Bid Bond), D.7.5 (Checks).  On the afternoon of August 20, 2008, WASA procurement officer Carlo Enciso opened the bids that were received.  *Id.* ¶ 50. Among the other bidders were Defendants Civil Construction, LLC ("Civil Construction"), Anchor Construction Corporation ("Anchor"), Fort Myer Construction Corporation ("Fort

Myer"), and Capitol Paving of D.C., Inc. ("Capitol Paving"). *See id.* ¶ 51 & Ex. D.9.1 (Bid Tabulation Sheet). Cheeks alleges that Defendant Western Surety Company ("Western Surety") issued guaranteed bid bonds on behalf of these other bidders. *See id.* ¶ 50. CNA's bid was the lowest of the eight bids received and was announced as the lowest bidder. *Id.* ¶ 51 & Ex. D.9.1.

On September 9, 2008, Cheeks received a letter from WASA Contracting Officer Jerry Johnson informing him that the bid submitted on August 20, 2008 had been deemed non-responsive and therefore was not eligible for award. *Id.* ¶ 53 & Ex. H.1.1 (Sept. 9, 2008 letter). The rejection letter informed Cheeks that "[e]lements considered in this decision were that your bid did not include a completed Bid Bond with sureties or certified check[s] for five percent (5%) of the bid amount." *See id.*, Ex. H.1.1. On September 30, 2008, Cheeks filed a Bid Protest with WASA requesting "equitable allotted time to reissue the bid bond to DC WASA." *Id.* ¶ 54 & Ex. K.1.1-2 (Bid Protest). On October 23, 2008, WASA Director of Procurement John P. Christodoulakis issued a letter stating the Contracting Officer's decision rejecting Cheeks's bid protest. *See id.*, Ex. K.1.4-5 (Oct. 23, 2008 letter). The letter stated that Cheeks's bid protest was untimely filed and that the bid was properly rejected for failure to include bond security. *Id.* On November 6, 2008, the WASA Board of Directors gave approval to award Contract No. 080020 to the next lowest bidder, Anchor Construction Corporation. *Id.* ¶ 55 & Ex. G.1.11 (Nov. 6, 2008 Resolution).

### 2. WASA IFB No. 090080

On March 25, 2009, Cheeks submitted a bid for CNA in response to WASA's IFB No. 090080, entitled "Sanitary Sewer Lateral Replacements." *See* Compl., Ex. D.9.2 (Bid Tabulation Sheet). The amount of the bid was listed on the bid call sheet as $11,298,320, which was the

highest of the seven bids received. *See id.* On March 29, 2009, Cheeks filed a Bid Protest indicating that CNA's actual base bid (after deduction of contingent items) was $5,040,000, making it the lowest of the seven bids received. *See* Compl., Ex. K.2.1-2 (Bid Protest). WASA allegedly failed to respond to Cheeks's bid protest. *Id.* ¶ 57. The contract was ultimately awarded to the original low-bidder, Corinthian Contractors. *See* Compl., Ex. D.1.10 (WASA Executed Construction Contract Summary). The other bidders included Defendants Fort Myer, Anchor, Civil Construction, and Capitol Paving. *See id.*, Ex. D.9.2.

### 3. WASA IFB No. 090020

On April 1, 2009, Cheeks submitted a bid for CNA in response to WASA's IFB No. 090020, entitled "Fire Hydrant Replacement Contract 4." *See* Compl., Ex. D.7.3 (Bid Form). The amount of the bid was $2,817,600, and Cheeks submitted a bid bond for $140,880 with corporate checks. *Id.*, Ex. D.7.4-5 (Bid Bond, checks). The other bidders included Defendants Fort Myer, Civil Construction, Capitol Paving, and Anchor. *Id.*, Ex. D.9.3 (Bid Tabulation Sheet). The contract was ultimately awarded to the lowest bidder, Nastos Construction, Inc. *See id.*; *id.*, Ex. D.1.10 (WASA Executed Construction Contract Summary).

### 4. DPW IFB No. DCKT-2009-B-0003

Cheeks submitted a bid for CNA in response to DPW's IFB No. DCKT-2009-B-0003, entitled "On-Site Preventive Maintenance Services." *See* Compl., Ex. D.11.1 (Bid Tabulation Sheet). The total amount of the bid was $3,639,901, and it was the lowest bid received when the bids were opened on December 29, 2008. *See id.* On December 30, 2008, DPW Contracting Officer James Roberts sent a letter by fax to Cheeks explaining that the low bidder is not automatically awarded a contract and that contractors must demonstrate responsibility for the

project; the letter asked Cheeks to provide certain background information about finances and operations. *See id.*, Ex. D.19.1-4 (Dec. 30, 2008 letter). Cheeks faxed a letter to Roberts requesting additional time to provide this information, and Roberts allowed Cheeks to have two additional days. *See id.* ¶ 287. However, Cheeks apparently was unable to provide sufficient information in time for DPW.[1]

5. DDOT IFB No. DCKA-2009-B-0025

Cheeks submitted a bid for CNA in response to DDOT's IFB No. DCKA-2009-B-0025, entitled "Pavement Restoration City-Wide." *See* Compl., Exs. D.8.1 (Bid Form) & D.10.3 (Bid Tabulation Sheet). The sealed bid opening was held on March 18, 2009. Compl. ¶ 297. The sixth amendment to the IFB was emailed to Cheeks on March 16, 2009. *Id.* In order to strategically compete for the contract, Cheeks had to readjust the bid. *Id.* ¶ 299. The amount of the bid was $54,252,805. *See* Compl. ¶ 42.[2] This was the lowest bid reflected on the Bid Tabulation Sheet. *See id.*, Ex. D.10.3. The other bidders included Defendants Fort Myer and Capitol Paving. *Id.* DDOT's Contracting Officer, Jerry M. Carter, had concerns with the type of bid guarantee submitted by Cheeks and denied Cheeks time to resubmit his bond form. *Id.* ¶¶ 302-03. Cheeks's bid was rejected by letter from Jerry M. Carter dated May 27, 2009. *Id.* ¶ 306.[3] Cheeks filed a Bid Protest on behalf of CNA. *See id.*, Ex. K.4.4-5 (Bid Protest).

Cheeks alleges that two of other bidders, Fort Myer and Capitol Paving, have shared

---

[1] The allegations in the Complaint do not describe the outcome of this process.

[2] There is a discrepancy between the amount of the bid listed on the Bid Tabulation Sheet ($54,552,805) and the amount described in the Complaint.

[3] Cheeks has not provided a copy of this letter or explained the reasons proffered by DDOT for the rejection of the bid.

ownership or family relations.  *See* Compl. ¶ 304.

B.      *Claims Asserted in the Complaint*

Cheeks asserts 18 counts in his Complaint, which the Court shall summarize below.

Cheeks prays for relief in the form of damages in the amount of $1,778,010,862.95.  *See* Compl.

¶ 383.

1.      Counts One, Two, Three, Four, Five, Seven, Eleven, Twelve, and
        Thirteen: Antitrust Violations for Bid-Rigging Conspiracy

The first four counts in the Complaint are asserted against Defendants Fort Myer, Anchor,

Civil Construction, Capitol Paving, and three individuals who are officers of one or more of

these companies: Francisco Rodriguez Neto ("Neto"), Jose Rodriguez ("Rodriguez"), and Lewis

Shrensky ("Shrensky").  *See* Compl. at 25, 30, 35, 37.  Rodriguez is alleged to be a Director of

Anchor, principal owner of Fort Myer, and principal manager of Civil Construction.  *Id.* ¶ 71.

Shrensky is alleged to be the Secretary, Treasurer, Director and Registered Agent of Fort Myer

and a principal manager of Civil Construction.  *Id.* ¶ 73.  Neto is alleged to be the Vice President

and a Director of Fort Myer, a Director of Anchor, and the President, Treasurer, and a Director of

Capitol Paving.  *Id.* ¶ 74.[4]

In Count One, Cheeks alleges that these Defendants were engaged in a bid-rigging

conspiracy in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.  *Id.* ¶¶ 63-68.

Cheeks claims that Fort Myer, Anchor, Civil Construction, and Capitol Paving shared common

ownership and submitted collusive bids in order to make the winning bidder appear competitive

_____

[4] In an affidavit filed with the Court, Neto states that he is President of Capitol Paving but
is not an employee or officer of Fort Myer.  *See* [43] Suppl. Defs. Neto & Capitol Paving's Mot.
to Quash Service, Ex. B (Aff. of Francisco R. Neto) ¶¶ 4-5.

and reasonable. *Id.* ¶¶ 68, 78. Cheeks contends that Western Surety facilitated this bid-rigging conspiracy by securing bonds for these companies when it knew or should have known that they were engaged in collusive anti-competitive practices made possible by its bond guarantees. *Id.* ¶ 70. Cheeks also claims that WASA, DDOT, and the D.C. Council Committee on Public Works and Transportation aided and abetted this conspiracy by accepting and ultimately awarding bids to one of the conspiring companies. *Id.* ¶ 69. Cheeks contends that this bid-rigging conspiracy prevented him from winning bids and competitively injured him. *Id.* ¶¶ 77-79.

In Count Two, Cheeks makes substantially identical allegations and asserts a violation of D.C. Code § 28-4502, which is substantively identical to section 1 of the Sherman Act. *See* Compl. ¶¶ 81-92. In Count Three, Cheeks alleges that Defendants' practices constituted a price-fixing combination in violation of section 1 of the Sherman Act. *See id.* ¶¶ 93-99. In Count Four, Cheeks alleges that Defendants' bid-rigging scheme constitutes common law fraud. *Id.* ¶¶ 100-25. Cheeks asserts that the agencies who were involved in the solicitation of bids "perpetrated this fraud" by accepting bids from the construction companies knowing that they shared common ownership. *Id.* ¶ 107. In Count Seven, Cheeks alleges that bid-rigging conspiracy constitutes a violation of section 1 of the Sherman Act by the four construction company defendants (Fort Myer, Anchor, Civil Construction, and Capitol Paving), the three WASA entity defendants (the WASA Procurement Department, the WASA Board of Directors, and the WASA Retail Services Committee), the DDOT Office of Contracting and Procurement, and the D.C. Council Committee on Public Works and Transportation. *See* Compl. at 56-57, ¶ 167.

Count Eleven is asserted against Defendants Rodriguez, Shrensky, and Neto and alleges that these defendants violated the Clayton Antitrust Act, 15 U.S.C. §§ 12 *et seq.*, by orchestrating collusive bidding practices. *See* Compl. at 79, ¶¶ 238-41. Count Twelve asserts a similar claim against the four construction company defendants (Fort Myer, Anchor, Civil Construction, and Capitol Paving). *See id.* at 84, ¶¶ 250-52.

Count Thirteen alleges that Western Surety violated the Sherman Act by issuing bonds for the four construction company defendants and facilitating their collusive bidding practices. *See* Compl. at 87, ¶¶ 263-66.

Count Five of the Complaint is merely captioned "Others in Question - Names, Relations and Affiliations of Defendants in Question; Pardon Remedy" and lists no specific defendants. *See* Compl. at 42. In Count Five, Cheeks identifies other parties who were involved in the five bid solicitations in question and poses questions about their relationship to the named defendants. *See id.* ¶¶ 126-47.

### 2. Count Six: Violation of WASA Procurement Regulations

Count Six alleges violations of WASA procurement regulations by the WASA Procurement Department and various individuals affiliated with WASA: Avis Russell, Interim General Manager; Jerry Johnson, General Manager; Guss Bass, Program Manager of Services: Engineering and Technical Services; John Christodoulakis, Procurement Director; and Carlo Enciso, Senior Construction Contract Administrator. *See* Compl. at 52. Cheeks contends that the rejection of his bids for WASA IFB Nos. 080020, 090080, and 090020 violated WASA regulations because WASA failed to notify Cheeks of mistakes in his bids (such as the omission of a surety) and allow him to correct the mistakes. *See id.* ¶¶ 151-57.

9

### 3. Counts Eight, Nine, and Seventeen: Tortious Interference

In Count Eight of the Complaint, Cheeks alleges that the four construction company defendants (Fort Myer, Anchor, Civil Construction, and Capitol Paving), the WASA Procurement Department, and the DDOT Office of Contracting and Procurement are liable for tortious interference with business relationships. *See* Compl. at 60, ¶ 177. Cheeks alleges that these defendants interfered with the contractual relationship established with WASA when Cheeks submitted low bids. *See id.* ¶¶ 178-81. Count Seventeen asserts a similar claim against the same defendants. *See id.* at 109, ¶¶ 343-51.

Count Nine asserts a similar claim against the construction company defendants and their officers (Fort Myer, Anchor, Civil Construction, Capitol Paving, Rodriguez, Shrensky, and Neto). *See id.* at 65. Cheeks alleges that these defendants are liable for "tortious interference with prospective business advantage" by interfering with the business relationship that Cheeks was developing with WASA and DDOT. *Id.* ¶¶ 195-203. Cheeks claims that these defendants improperly used their superior financial and institutional resources to obtain favorable bid solicitation treatment. *Id.* ¶ 197.

### 4. Count Ten: Violation of Non-Collusion Affidavit

Count Ten of the Complaint alleges that the construction company defendants and their officers (Fort Myer, Anchor, Civil Construction, Capitol Paving, Rodriguez, Shrensky, and Neto) falsely submitted a "Non-Collusion Affidavit" to WASA and DDOT in connection with their bids. *See* Compl. at 76. Cheeks claims that these defendants violated the non-collusion rules and conditions for participating in WASA and DDOT bid solicitations. *See id.* ¶¶ 225-26.

### 5. Count Fourteen: Discrimination in Bid Solicitations

Count Fourteen alleges that the WASA Procurement Department and its individual officers (Defendants Avis Russell, Jerry Johnson, Guss Bass, John Christodoulakis, and Carlo Enciso), as well as DPW's Office of Contracting and Procurement and two of its contracting officers (Defendants Tara Sigamoni and James Roberts), unlawfully discriminated against the bids submitted by Cheeks. *See* Compl. at 90, ¶¶ 273-87.

### 6. Count Fifteen: Contract Steering

Count Fifteen is asserted against the Mayor of the District of Columbia, Adrian M. Fenty, the Executive Office of the Mayor, the DDOT Office of Contracting and Procurement and several of its officials (David P. Gragan, Chief Procurement Officer; Jerry M. Carter, Contracting Officer; and Gabe Klein, DDOT Director), and the DDOT Infrastructure Project Management Administration and its program manager, Said Cherifi. *See* Compl. at 95. Cheeks alleges that these defendants steered contracts toward Fort Myer, Anchor, Civil Construction, and Capitol Paving by giving preferential treatment to these companies and creating contract specifications that only these companies could fulfill. *See id.* ¶¶ 293-94. Cheeks alleges that Jerry Carter, DDOT Contracting Officer, amended the contract for bid No. DCKA-B-2009-2025 so as to provide Fort Myer and Capitol Paving with a competitive advantage. *See id.* ¶¶ 296-300. Cheeks further alleges that Carter denied Cheeks time to cure defects in his bid. *See id.* ¶¶ 302-03.

### 7. Count Sixteen: Oversight Failure

Count Sixteen is asserted against the construction company defendants (Fort Myer, Anchor, Civil Construction, and Capitol Paving) and their officers (Shrensky, Rodriguez, Neto,

and Cristina R. Gregoria), the WASA Board of Directors (William M. Walker, Daniel M. Tangherlini, F. Alexis H. Roberson, Alan J. Roth, Keith M. Stone, and David J. Bardin), the D.C. Council Committee on Public Works and Transportation and its members and staff (Jim Graham, Kwame R. Brown, Muriel Bowser, Phil Mendelson, Tommy Wells, Steven Hernandez, Jonathan Kass, and John DeTaeye), the Executive Office of the Mayor, and D.C. Mayor Adrian M. Fenty. *See* Compl. at 101-02. Cheeks claims that these defendants "overlooked, blessed and condoned collusion activity" and allowed fraudulent contract bid participation. *Id.* ¶¶ 318-19.

8.      Count Eighteen: Violation of Civil Liberties

Count Eighteen is asserted against the four construction company defendants (Fort Myer, Anchor, Civil Construction, and Capitol Paving) and their officers (Shrensky, Rodriguez, and Neto), the Executive Office of the Mayor, and D.C. Mayor Adrian M. Fenty. *See* Compl. at 114. Cheeks alleges that the defendants conducted an illegal investigation into Cheeks and his associates. *Id.* ¶ 360. Cheeks claims that he was followed by Defendants and that Defendants shared information about his private and public movements, his vehicle, his residence, and where he dined. *See id.* ¶¶ 361-63. Cheeks further claims that Defendants surveilled him through, among other things, photography, wireless electronic eavesdropping and intercepting equipment, human private investigators, and vehicular trailing. *Id.* ¶ 364.

C.      *Procedural History*

Cheeks filed this action *pro se* on November 17, 2009.[5]  On December 14, 2009, a default

---

[5] Cheeks litigated this action *pro se* until May 18, 2010, when counsel entered an appearance on his behalf. Because all of the pending motions were fully briefed before counsel entered an appearance, the Court treats Cheeks as a *pro se* litigant for purposes of this Memorandum Opinion.

was entered against Fort Myer, and Cheeks filed a Motion for Default Judgment. Fort Myer opposes the motion and has moved to vacate the entry of default, claiming that Fort Myer was never properly served because the summons and complaint were left with the company's receptionist, who is not authorized to accept service of process. *See* Docket No. [27]. On December 17, 2009, Defendants Capitol Paving and Neto filed a Motion to Quash Service, claiming that Cheeks had improperly served process on Capitol Paving's receptionist. *See* Docket No. [17]. On January 7, 2010, Defendants Rodriguez and Shrensky filed a Motion to Quash Service of Process, claiming that Cheeks improperly served them by leaving papers with an official at Fort Myer. *See* Docket No. [64]. Also on January 7, 2010, the individual WASA Defendants (Avis Russell, Jerry Johnson, Guss Bass, John Christodoulakis, Carlo Enciso, William M. Walker, Neil Albert, Daniel M. Tangherlini, F. Alexis H. Roberson, Alan J. Roth, Keith M. Stone, David J. Bardin, Brenda Richardson, Joseph Cotruvo, and Howard Gibbs) filed a Motion to Quash Service of Process, claiming that Cheeks's service on the WASA Board Secretary was not effective service as to them. *See* Docket No. [65]. Cheeks opposes these motions, and they have been fully briefed.

On December 21, 2009, Defendants Western Surety and Paul T. Bruflat filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* Docket No. [31]. On January 28, 2010, the District of Columbia Defendants (District of Columbia, Mayor Adrian M. Fenty, Executive Office of the Mayor, David P. Gragan, DDOT Office of Contracting and Procurement, Jerry M. Carter, Gabe Klein, DDOT Infrastructure Project Management Administration, Said Cherifi, DPW Office of Contracting and Procurement, James Roberts, and Tara Sigamoni) filed a Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment, claiming that

Cheeks has failed to state a claim against them and that Cheeks was not awarded the contracts because he failed to comply with bid procedures. *See* Docket No. [81]/[82]. On January 29, 2010, the individual WASA Defendants (named in the preceding paragraph) filed a Motion to Dismiss for failure to state a claim upon which relief can be granted. *See* Docket No. [83]. Also on January 29, 2010, the D.C. Council Defendants (Committee on Public Works and Transportation (members Jim Graham, Kwame R. Brown, Muriel Bowser, Phil Mendelson, and Tommy Wells, and staff members Steven Hernandez, Jonathan Kass, and John DeTaeye) filed a Motion to Dismiss based on legislative immunity and failure to state a claim upon which relief can be granted. *See* Docket No. [84]. The same day, Defendant Civil Construction filed a Motion to Dismiss Complaint pursuant to Rules 12(b)(5) for insufficient service of process, 12(b)(6) for failure to state a claim upon which relief can be granted, and 12(b)(7) and 19 for failure to join a necessary party. *See* Docekt No. [85]. Defendant Anchor also filed a Motion to Dismiss under Rule 12(b)(6). *See* Docket No. [88]. Cheeks opposes these motions, and they have been fully briefed.[6]

Cheeks has also filed various motions seeking to amend or supplement his briefs filed with the Court, some of which are opposed. *See* Docket Nos. [96], [100], [111], [112], [119],

---

[6] Because Cheeks brought this action *pro se*, the Court issued orders pursuant to *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), advising Cheeks that if he failed to respond to Defendants' motions to dismiss, the Court might treat the motions as conceded. *See* Docket Nos. [25], [36], [38], [39], [67], [90], [117]. Cheeks filed timely responses to these orders. When Cheeks failed to file a timely response to the District of Columbia Defendants' motion to dismiss, the District of Columbia Defendants moved the Court for an order deeming their dispositive motion conceded. *See* Docket No. [116]. However, the Court had not yet issued a *Fox* order with respect to that motion, and Cheeks timely responded to the Court's *Fox* order. Therefore, the Court shall DENY the District of Columbia Defendants' [116] Motion to Deem Conceded Their Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment.

[122].  The Court has considered all of the materials submitted by Cheeks in deciding the

pending motions and shall therefore grant the motions.  Defendant Anchor has also filed a [126]

Motion for Leave to File Reply and Opposition to Plaintiff's Response and Motion to Dismiss,

with a proposed reply brief attached.[7]  The Court finds that Cheeks will not be prejudiced by the

late filing of the reply brief and therefore the Court shall grant the Motion for Leave and consider

Anchor's reply.

## II.  LEGAL STANDARD

Most of the defendants have moved to dismiss the Complaint for failure to state a claim

upon which relief can be granted pursuant to Rule 12(b)(6).  Because many of these defendants

have raised questions about Cheeks's standing to bring this action, the Court must also consider

whether dismissal is appropriate for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### A.      *Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter

jurisdiction.  In determining whether there is jurisdiction, the Court may "consider the complaint

supplemented by undisputed facts evidenced in the record, or the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts."  *Coalition for Underground

Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome

Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he

district court may consider materials outside the pleadings in deciding whether to grant a motion

to dismiss for lack of jurisdiction.").  "At the motion to dismiss stage, counseled complaints, as

---

[7] Although Anchor's motion is alternatively styled an "opposition" to Cheeks's "Motion to Dismiss," the Court notes that Cheeks's "Motion to Dismiss" is actually an opposition brief, and therefore Cheeks is not entitled to a further reply.

well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

      B.     *Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950. In evaluating a motion to dismiss under Rule 12(b)(6), the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.

1999)).

Where, as here, the action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. DISCUSSION

The motions pending before the Court raise primarily two issues: whether Cheeks properly effected service on several of the defendants and whether Cheeks has failed to state a claim upon which relief can be granted. Within their motions, several defendants have argued that this Court lacks subject matter jurisdiction over this action because all of the injuries alleged in the Complaint were suffered by Cheeks's corporation, CNA, and Cheeks lacks standing to sue for CNA's injuries.[8] *See* [31] Br. Supp. Defs. Western Surety Co. & Paul T. Bruflat's Rule 12(b)(6) Mot. to Dismiss at 7-9; [81] District Defs.' Mem. P. & A. Supp. Their Mot. to Dismiss at 13-14; [83] P. & A. Supp. WASA Defs.' Mot. to Dismiss at 4-6; [88] Anchor Constr. Corp.'s Mot. to Dismiss at 3-4; [105] Reply to Pl.'s Response to Civil Construction LLC's Mot. to Dismiss at 3-4. Because standing is essential to the Court's subject matter jurisdiction, the Court shall determine whether Cheeks has standing before turning to the merits of the claims asserted in the Complaint. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 98 (1998).

---

[8] Although Cheeks frequently references CNA in his Complaint, it is clear that CNA has not been named a plaintiff in this action and that Cheeks is not bringing this action as a derivative suit on behalf of CNA. Cheeks has identified himself as the only plaintiff in his Complaint, has used his individual address in all filings with this Court (which is distinct from CNA's address), and instituted this action *pro se*, a privilege that is denied to corporate entities. He also has not complied with the requirements of Rule 23.1 with respect to derivative actions.

*A.       Standing*

To establish the "irreducible constitutional minimum of standing," a plaintiff must show: (1) that he or she suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury will likely be remedied by a favorable court decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Beyond this constitutional minimum, the federal courts have imposed prudential limitations on who may invoke the courts' judicial powers. Foremost among these prudential limitations is the rule that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The general prohibition on third party standing is based on the principles that courts should not adjudicate the rights of third parties unnecessarily and that third parties will usually be the best proponents of their own rights. *See Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976) (plurality opinion). Although a litigant may establish third party standing in some limited circumstances, to do so "there must exist some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 411 (1991); *see also Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1361-62 (D.C. Cir. 2000) (discussion exceptions to the bar on third party standing).

A related principle is the so-called shareholder standing rule: "a longstanding equitable restriction that prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990); *see also Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14

(D.C. Cir. 1984) ("No shareholder–not even a sole shareholder–has standing in the usual case to bring suit in his individual capacity on a claim that belongs to the corporation.")  However, a shareholder may invoke an exception to this rule where the shareholder has a "direct, personal interest in a cause of action . . . even if the corporation's rights are also implicated." *Id.*  In determining whether a shareholder's claims are purely derivative of the corporation's claims for standing purposes and thus barred by the shareholder standing rule, courts apply the law of the state of incorporation. *Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 2d 68, 76 (D.D.C. 2009).

With the exception of Count Eighteen, which asserts claims for violations of Cheeks's civil liberties, it appears that all of the claims asserted in the Complaint belong to Cheeks's corporation, CNA.  Except for Count Eighteen, all of the allegations in the Complaint are based on injuries resulting from Cheeks's submission of bids on behalf of his corporation, CNA.  Although Cheeks does not clearly distinguish between his own interests and those of CNA's in the Complaint, it is clear from the overall nature of the allegations and the exhibits attached to the Complaint that Cheeks submitted the bids on behalf of CNA and not on his own behalf as an individual.  For example, on each of the bid submission forms attached as exhibits to the Complaint, the bidder is identified as "CNA, Inc.," and Cheeks checked the box on each form indicating that the bidder operates as a corporation. *See, e.g.*, Compl., Ex. D.7.1.  Cheeks was merely acting as an agent of CNA, and therefore the victim of the alleged bid-rigging conspiracy and all the related legal claims is CNA, not Cheeks. *See Vinci v. Waste Management, Inc.*, 80 F.3d 1372, 1375 (9th Cir. 1996) ("A shareholder of a corporation injured by antitrust violations has no standing to sue in his or her own name." (citation omitted)).  Cheeks only has standing to

assert the corporation's claims if he has some direct personal interest at stake that is distinct from the corporation's interests.

Because CNA is a District of Columbia corporation, *see* Compl., Ex. C.1.1 (Articles of Incorporation), the Court applies District of Columbia law in determining whether Cheeks's claims are derivative. To have standing under D.C. law, a shareholder "must identify a legal interest that has been directly or independently harmed, i.e., a 'special injury' that does not derive from the injury to the corporation." *Harpole Architects*, 668 F. Supp. 2d at 77 (quoting *Labovitz v. Wash. Times Corp.*, 172 F.3d 897, 901 (D.C. Cir. 1999)); *see also Estate of Raleigh v. Mitchell*, 947 A.2d 464, 469 (D.C. 2008) ("Since the [plaintiff] had no legal interest in the real property belonging to the corporation, it could not sue individually to redress any alleged wrongs against the corporation's property interests."); *Mona v. Mona Elec. Group, Inc.*, 934 A.2d 450, 464 (Md. Ct. Spec. App. 2007) ("To maintain a direct action, [a] shareholder must allege that he has suffered 'an injury that is separate and distinct from any injury suffered either directly by the corporation or derivatively by the stockholder because of the injury to the corporation.'" (citation omitted)); *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988) ("For a plaintiff to have standing to bring an individual action, he must be injured *directly* or *independently* of the corporation.")[9] "The reasons for the general rule precluding shareholders from suing individually to redress a corporate right are to avoid multiple suits, to prevent a bar to the corporation's right

_____

[9] D.C. courts "may look to the law of other jurisdictions in interpreting comparable laws or rules, absent definitive authority, in this jurisdiction." *Behradrezaee v. Dashtara*, 910 A.2d 349, 356 (D.C. 2006). The D.C. courts have not definitely articulated a test for evaluating shareholder standing, and the D.C. courts have often looked to Delaware for guidance on matters of corporate law and to Maryland for common law. *See Harpole Architects*, 668 F. Supp. 2d at 76, 77 n.4.

of action, and to ensure that any damages recovered will be available to the corporation's

creditors and any other shareholders." *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 469 (D.C.

2008). Generally, economic damages to the shareholder that result from losses to the corporation

do not qualify as direct or independent harm giving rise to shareholder standing. *Harpole*

*Architects*, 668 F. Supp. 2d at 77.

With the exception of the allegations in Count Eighteen of the Complaint, Cheeks has

failed to allege any harms that are independent of the injuries to CNA. Cheeks claims that

Defendants' alleged misconduct prevented him from winning bids, denied him a fair opportunity

to compete for contracts, and disrupted his business, causing him to lose revenue and profits.

However, these are damages that accrued, if at all, to CNA, since it was CNA who would have

been a party to the contracts at issue. There is no allegation that CNA's ability to bring its own

lawsuit has been hindered in any way. Therefore, the Court finds that Cheeks lacks standing to

bring claims arising out of CNA's submission of bids to WASA, DPW, and DDOT. The Court

also finds that the claims asserted in Counts One through Seventeen are all related to CNA's

submission of bids and the alleged bid-rigging conspiracy and related anticompetitive conduct.[10]

The Court also notes that in response to the various motions to dismiss that raised this

issue, Cheeks failed to address the issue of standing.[11] "It is well understood in this Circuit that

---

[10] To the extent that Count Sixteen may be construed as asserting a claim against D.C.
government officials for failing to act in accordance with laws, it is clear that Cheeks lacks
standing to pursue this claim because it is a "generalized grievance" that is "not only widely
shared, but is also of an abstract and indefinite nature–for example, harm to the 'common
concern for obedience to law.'" *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 23 (1998) (citation
omitted).

[11] Cheeks's responses to Defendants' motions are devoid of legal argument and fail to
respond to the central issues raised by Defendants. Cheeks's filings with the Court mostly repeat

when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.") Therefore, the Court alternatively finds that Cheeks has conceded that he lacks standing to assert claims on behalf of CNA, at least with respect to those defendants who raised this issue. Because Counts One through Seventeen of the Complaint assert claims that belong to CNA rather than Cheeks, the Court must dismiss Counts One through Seventeen for lack of subject matter jurisdiction.

Count Eighteen does not involve claims that clearly belong to CNA. In Count Eighteen, Cheeks appears to claim that Defendants have violated his constitutional rights by surveilling him and tracking his movements. Because Count Eighteen involves a direct personal injury to Cheeks that may be redressed by a favorable Court decision (such as one awarding money damages), the Court finds that Cheeks has standing to bring Count Eighteen.[12] Therefore, the

---

the allegations of the Complaint and provide additional documentation in support of Cheeks's claims.

[12] The District of Columbia argues that Count Eighteen should be dismissed for lack of subject matter jurisdiction because the claims asserted therein are "essentially fictitious" and "not realistically distinguishable from allegations of 'little green men' . . . ." *See* Docket No. [81] at 39; *see also Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009) ("No federal question jurisdiction exists to make a claim suitable for decision when the claim is patently insubstantial." (internal quotation marks and citations omitted)). The Court finds, however, that the allegations in Count Eighteen are sufficiently substantial to present a federal question for decision on the merits.

Court shall consider whether Cheeks's claims in Count Eighteen can survive Defendants' motions to dismiss.

### B. *Motion to Dismiss for Failure to State a Claim*

Count Eighteen purports to assert a claim for "violation of civil liberties" against the four construction company defendants (Fort Myer, Anchor, Civil Construction, and Capitol Paving) and their officers (Shrensky, Rodriguez, and Neto), as well as the Executive Office of the Mayor and D.C. Mayor Adrian M. Fenty.[13]  The primary factual allegations in Count Eighteen are that Defendants "shared information on Plaintiff's private and public movements of social organizations, place of dinning [*sic*], type of vehicle, ownership of vehicle and residence location" and that Defendants

> violated Plaintiff's United States Constitutional rights, Amendment 1, of Plaintiff and civil liberties through surveillance tactics of photography, wireless electronic eavesdropping and intercepting equipment by unknown users, human private investigators, with public space infringement, vehicular trailing at random, through several states and counties, without approval of state governments or federal agencies.

Compl. ¶¶ 363-64.  Although it is not entirely clear what legal claim Cheeks is seeking to assert in Count Eighteen, these allegations may be liberally construed as asserting a claim for violation of the Fourth Amendment's ban on unreasonable searches and seizures or, alternatively, some constitutional right to privacy.  Therefore, the Court shall analyze Count Eighteen as a claim for

---

[13] It is somewhat unclear as to whether Cheeks intends to assert similar claims against other Defendants named in paragraph 360 of the Complaint.  Because the Court finds that Cheeks's allegations in Count Eighteen fail to state a claim against any of the defendants, the Court need not resolve the question of which defendants are named in Count Eighteen.

deprivation of constitutional rights under 42 U.S.C. § 1983.[14]  This is consistent with how Defendants have interpreted the allegations of Count Eighteen in their motions to dismiss.

To the extent that Cheeks is suing private actors for alleged constitutional violations, his claims fail as a matter of law.  "A cognizable constitutional deprivation requires that the deprivation be the result of government action."  *Bishop v. Fed. Intermediate Credit Bank of Wichita*, 908 F.2d 658, 663 (10th Cir. 1990); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) ([T]he party charged with the deprivation must be a person who may fairly be said to be a state actor.")  There are no allegations that the private parties alleged to have conducted surveillance did so under the authority of the government; in fact, the allegations are to the contrary.  *See* Compl. ¶ 364 ("Defendants violated Plaintiff's United States Constitutional rights . . . without approval of state governments or federal agencies.")  Therefore, the Court finds that Cheeks has failed to state a claim upon which relief can be granted against all non-government defendants.

With respect to claims that may be asserted against government defendants such as the Executive Office of the Mayor and D.C. Mayor Adrian M. Fenty, the allegations in Count Eighteen are too imprecise and conclusory to state a cause of action.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Here, the allegations consist of generalized complaints about surveillance and information

---

[14] Section 1983 reads, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."  42 U.S.C. § 1983.

sharing that do not plausibly show a constitutional violation. At best, the allegations suggest that Defendants monitored Cheeks's whereabouts, which is not necessarily unconstitutional. Thus, the allegations do not provide "more than a sheer possibility that a defendant has acted unlawfully." *See id.* Therefore, the allegations in Count Eighteen fail to state a claim upon which relief can be granted and should be dismissed. In response to Defendants' motions to dismiss Count Eighteen, Cheeks failed to address the argument that he had failed to state a claim. Accordingly, the Court alternatively treats this argument as conceded, at least with respect to those defendants who raised this issue.

Because Count Eighteen fails to state a claim against any defendants, the Court shall dismiss Count Eighteen under Rule 12(b)(6). Although some non-government defendants (Fort Myer, Capitol Paving, Rodriguez, Shrensky, and Neto) have not explicitly moved the Court to dismiss this claim, it is well settled in this Circuit that a court may dismiss a complaint *sua sponte* pursuant to Rule 12(b)(6) where it is "patently obvious" that the plaintiff cannot prevail on the facts alleged in the complaint. *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726-27 (D.C. Cir. 1990) (per curiam) ("Because it is patently obvious that Baker could not have prevailed on the facts alleged in his complaint, we find that *sua sponte* dismissal was appropriate."); *see also Zernik v. U.S. Dep't of Justice*, 630 F. Supp. 2d 24, 25 (dismissing complaint *sua sponte* for failure to state a claim); *Perry v. Discover Bank*, 514 F. Supp. 2d 94, 95 (D.D.C. 2007) (dismissing *pro se* complaint *sua sponte* where the complaint made clear that plaintiff had failed to provide "any factual or legal basis for alleged wrongdoing by defendants"). Because it is clear that Cheeks cannot prevail on a constitutional claim against non-state actors, *sua sponte* dismissal is appropriate. Therefore, the Court shall dismiss Count Eighteen against

all defendants.

### C. Default Against Fort Myer

Fort Myer has moved to vacate the entry of default, claiming that it was not properly served with process. "The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In considering whether a defendant has shown good cause, courts should consider three criteria, resolving all doubts in favor of the party seeking relief from the default: (1) whether the default was willful; (2) whether a set-aside would prejudice the plaintiff, and (3) whether the defendant has presented a meritorious defense. *Capital Yacht Club. v. Vessel AVIVA*, 228 F.R.D. 389, 393 (D.D.C. 2005). In this case, a set-aside would not prejudice Cheeks because, as explained above, the Court lacks subject matter jurisdiction over most of claims against Fort Myer and Cheeks's remaining allegations against Fort Myer fail to state a claim upon which relief can be granted. Fort Myer's pleadings also indicate that its default was not willful. Therefore, the Court shall set aside the default and, for the reasons stated above, dismiss the claims against Fort Myer.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Cheeks lacks standing to bring the claims asserted in Counts One through Seventeen of the Complaint and therefore those claims must be dismissed for lack of subject matter jurisdiction. The Court also finds that the allegations in Count Eighteen of the Complaint fail to state a claim upon which relief can be granted against any defendants and may be dismissed, either upon defendants' motions or *sua sponte*. Therefore, the Court shall GRANT Defendant Fort Myer Construction Corporation's [27] Motion to Vacate Entry of Default; GRANT Defendants Western Surety Company and Paul T. Bruflat's [31] Rule

12(b)(6) Motion to Dismiss, GRANT the District of Columbia Defendants' [81] Motion to

Dismiss the Complaint; GRANT the WASA Defendants' [83] Motion to Dismiss; GRANT

Defendant Civil Construction LLC's [85] Motion to Dismiss Complaint; and GRANT Defendant

Anchor Construction Corporation's [88] Motion to Dismiss.  The Court shall set aside the default

of Defendant Fort Myer, dismiss Counts One through Seventeen of the Complaint under Rule

12(b)(1), and dismiss Count Eighteen against all defendants pursuant to Rule 12(b)(6).  All other

pending motions shall be denied without prejudice, and this case shall be dismissed in its

entirety.  An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge